UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| RYAN O'DELL, | : |
| | : |
| Plaintiff, | : Civil Action No. 22-cv-9273 |
| | : |
| v. | : **COMPLAINT FOR VIOLATIONS OF** |
| | : **SECTIONS 14(a) AND 20(a) OF THE** |
| STORE CAPITAL CORP., TAWN KELLEY, | : **SECURITIES EXCHANGE ACT OF** |
| MARY FEDEWA, MORTON H. | : **1934** |
| FLEISCHER, JAWAD AHSAN, JOSEPH M. | : |
| DONOVAN, DAVID EDWARDS, PH.D., | : **JURY TRIAL DEMANDED** |
| WILLIAM F. HIPP, CATHERINE D. RICE, | : |
| and QUENTIN P. SMITH JR., | : |
| | : |
| Defendants. | : |

Ryan O'Dell ("Plaintiff"), by and through his attorneys, alleges the following upon information and belief, including investigation of counsel and review of publicly-available information, except as to those allegations pertaining to Plaintiff, which are alleged upon personal knowledge:

1. This is an action brought by Plaintiff against BTRS Holdings Inc. ("Store Capital or the "Company") and the members Store Capital's board of directors (the "Board" or the "Individual Defendants" and collectively with the Company, the "Defendants") for their violations of Sections 14(a) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act"), 15 U.S.C. §§ 78n(a), 78t(a), and SEC Rule 14a-9, 17 C.F.R. 240.14a-9 and 17 C.F.R. § 244.100, in connection with the proposed acquisition of Store Capital by affiliates of GIC and Oak Street Real Estate Capital, LLC ("Oak Street").

2. Defendants have violated the above-referenced sections of the Exchange Act by causing a materially incomplete and misleading Preliminary Proxy Statement on Schedule 14A

(the "Proxy Statement") to be filed on October 24, 2022 with the United States Securities and Exchange Commission ("SEC") and disseminated to Company stockholders. The Proxy Statement recommends that Company stockholders vote in favor of a proposed transaction whereby the Company will merge with and into Ivory REIT, LLC ("Merger Sub"), a wholly-owned subsidiary of Ivory Parent, LLC ("Parent"), with Merger Sub continuing as the surviving entity (the "Proposed Transaction"). Pursuant to the terms of the definitive agreement and plan of merger the companies entered into on September 15, 2022 (the "Merger Agreement"), each Store Capital stockholder will receive $32.25 in cash (the "Merger Consideration") for each Store Capital share owned.

3. As discussed below, Defendants have asked Store Capital's stockholders to support the Proposed Transaction based upon the materially incomplete and misleading representations and information contained in the Proxy Statement, in violation of Sections 14(a) and 20(a) of the Exchange Act. Specifically, the Proxy Statement contains materially incomplete and misleading information concerning the analyses performed by the Company's financial advisors, Evercore Group L.L.C. ("Evercore") and Goldman Sachs & Co. LLC ("Goldman Sachs" and with Evercore, the "Financial Advisors") in support of their fairness opinions.

4. It is imperative that the material information that has been omitted from the Proxy Statement is disclosed to the Company's stockholders prior to the forthcoming stockholder vote so that they can properly exercise their corporate suffrage rights.

5. For these reasons and as set forth in detail herein, Plaintiff seeks to enjoin Defendants from taking any steps to consummate the Proposed Transaction unless and until the material information discussed below is disclosed to Store Capital's stockholders or, in the event

the Proposed Transaction is consummated, to recover damages resulting from the Defendants' violations of the Exchange Act.

## JURISDICTION AND VENUE

6. This Court has subject matter jurisdiction pursuant to Section 27 of the Exchange Act (15 U.S.C. § 78aa) and 28 U.S.C. § 1331 (federal question jurisdiction) as Plaintiff alleges violations of Sections 14(a) and 20(a) of the Exchange Act and SEC Rule 14a-9.

7. Personal jurisdiction exists over each Defendant either because the Defendant conducts business in or maintains operations in this District, or is an individual who is either present in this District for jurisdictional purposes or has sufficient minimum contacts with this District as to render the exercise of jurisdiction over Defendant by this Court permissible under traditional notions of fair play and substantial justice.

8. Venue is proper in this District under Section 27 of the Exchange Act, 15 U.S.C. § 78aa, as well as under 28 U.S.C. § 1391, because Plaintiff resides in this District.

## PARTIES

9. Plaintiff is, and has been at all relevant times, the owner of Store Capital stock and has held such stocks since prior to the wrongs complained of herein.

10. Individual Defendant Tawn Kelley has served as a member of the Board since 2020 and is the Company's Non-Executive Chairman of the Board.

11. Individual Defendant Mary Fedewa has served as a member of the Board since 2016 and is the Company's President and Chief Executive Officer.

12. Individual Defendant Morton H. Fleischer has served as a member of the Board since 2021 and is the Chair Emeritus.

13. Individual Defendant Jawad Ahsan has served as a member of the Board since February 2022.

14. Individual Defendant Joseph M. Donovan has served as a member of the Board since 2014.

15. Individual Defendant David Edwards, Ph.D. has served as a member of the Board since 2022.

16. Individual Defendant William F. Hipp has served as a member of the Board since 2016.

17. Individual Defendant Catherine D. Rice has served as a member of the Board since 2017.

18. Individual Defendant Quentin P. Smith Jr. has served as a member of the Board since 2014.

19. Defendant Store Capital is a Maryland corporation and maintains its principal offices at 8377 East Hartford Drive, Suite 100, Scottsdale, Arizona 85255. The Company's stock trades on the New York Stock Exchange under the symbol "STOR."

20. The defendants identified in paragraphs 10-18 are collectively referred to as the "Individual Defendants" or the "Board."

21. The defendants identified in paragraphs 10-19 are collectively referred to as the "Defendants."

**SUBSTANTIVE ALLEGATIONS**

**A.   The Proposed Transaction**

22. Store Capital is an internally managed net-lease real estate investment trust, or REIT, that is the leader in the acquisition, investment and management of Single Tenant Operational Real Estate, which is its target market and the inspiration for its name. STORE Capital is one of the largest growing net-lease REITs and owns a large, well-diversified portfolio that

4

consists of investments in more than 2,500 property locations across the United States, substantially all of which are profit centers.

23. On September 15, 2022, the Company announced the Proposed Transaction:

> SCOTTSDALE, Ariz. & SINGAPORE & CHICAGO--(BUSINESS WIRE)-- STORE Capital Corporation (NYSE: STOR, "STORE Capital" or the "Company"), an internally managed net-lease real estate investment trust (REIT) that invests in **S**ingle **T**enant **O**perational **R**eal **E**state, and GIC, a global institutional investor in partnership with Oak Street, a Division of Blue Owl, one of the largest net lease investors, today announced that they have entered into a definitive agreement under which GIC and funds managed by Oak Street will acquire STORE Capital in an all-cash transaction valued at approximately $14 billion.
>
> Under the terms of the definitive merger agreement, STORE Capital stockholders will receive $32.25 per share in cash, which represents a premium of 20.4% to STORE Capital's closing stock price as of September 14, 2022 and a premium of 17.8% to the 90-day volume weighted average stock price through that date.
>
> "This all-cash transaction delivers a meaningful premium that provides immediate and certain value for our stockholders in a challenging market environment, while positioning the Company, its customers and its partners for continued success," said Tawn Kelley, Chairman of the Board of Directors of STORE Capital. "I would like to extend my thanks to the entire Board and management team for their hard work during this process, and for their unwavering commitment to acting in the best interests of our stockholders."
>
> "We are pleased to partner with GIC and Oak Street to deliver what we believe is an excellent outcome for our stockholders," said Mary Fedewa, President and Chief Executive Officer of STORE Capital. "This opportunity is an endorsement, by two leading real estate investors with significant access to capital, of the strength of our platform, our experienced leadership team and our disciplined investment approach. We look forward to continuing to grow and support our customers."
>
> "As one of the largest dedicated U.S. net lease real estate companies in a nearly US$4 trillion-dollar market, STORE Capital is a strong addition to GIC's diverse portfolio of U.S. real estate investments," said Adam Gallistel, Head of Americas Real Estate, GIC. "We are confident the Company will continue its trajectory of accretive growth by meeting the demand for long-term financing solutions from middle market U.S. companies. We look forward to working

closely with STORE Capital and our partners at Oak Street to grow this platform over the long term."

"As a global long-term investor, GIC seeks to invest in best-in-class businesses with strong long-term growth potential," said Lee Kok Sun, Chief Investment Officer of Real Estate, GIC. "We are thrilled to lead this investment in STORE Capital given its impressive cash flow profile, long-weighted average lease term and highly diversified portfolio with strong rent coverage."

"We are extremely excited to invest together with a like-minded and thoughtful partner in GIC," said Marc Zahr, President of Oak Street. "We believe the STORE Capital platform complements Oak Street's exposure to the triple-net industry and our focus on sale-leasebacks. The potential scale of this combination and partnership can deliver one of the most diversified, unique and long dated net lease platforms across the globe."

**Timing and Approvals**
The transaction, which was unanimously approved by the STORE Capital Board of Directors, is expected to close in the first quarter of 2023, subject to approval by STORE Capital's stockholders and the satisfaction of certain other customary closing conditions. The closing of the transaction is not subject to any financing conditions.

The definitive merger agreement includes a 30-day "go-shop" period that will expire on October 15, 2022, which permits STORE Capital and its representatives to actively solicit and consider alternative acquisition proposals. There can be no assurance that this process will result in a superior proposal, and the Company does not intend to disclose developments with respect to the go-shop process unless and until it determines such disclosure is appropriate or is otherwise required.

Under the terms of the definitive merger agreement, STORE Capital will declare and pay its third quarter cash dividend in the ordinary course. Thereafter, the Company has agreed to suspend payment of any further regular quarterly dividends through the closing.

Subject to and upon completion of the transaction, STORE Capital's common stock will no longer be listed on the New York Stock Exchange.

**Advisors**
Evercore and Goldman Sachs & Co. LLC are acting as financial advisors to STORE Capital, and DLA Piper LLP (US) is acting as its legal counsel. Eastdil Secured Advisors LLC and Citigroup Global Markets Inc. are acting as financial advisors to GIC and Oak Street. Skadden, Arps, Slate, Meagher & Flom LLP is acting as legal

counsel to GIC and Kirkland & Ellis LLP is acting as legal counsel to Oak Street.

* * *

24. The Board has unanimously agreed to the Proposed Transaction. It is therefore imperative that Store Capital's stockholders are provided with the material information that has been omitted from the Proxy Statement, so that they can meaningfully assess whether or not the Proposed Transaction is in their best interests prior to the forthcoming stockholder vote.

**B.     The Materially Incomplete and Misleading Proxy Statement**

25. On October 24, 2022, Store Capital filed the Proxy Statement with the SEC in connection with the Proposed Transaction. The Proxy Statement was furnished to the Company's stockholders and solicits the stockholders to vote in favor of the Proposed Transaction. The Individual Defendants were obligated to carefully review the Proxy Statement before it was filed with the SEC and disseminated to the Company's stockholders to ensure that it did not contain any material misrepresentations or omissions. However, the Proxy Statement misrepresents and/or omits material information that is necessary for the Company's stockholders to make an informed decision concerning whether to vote in favor of the Proposed Transaction, in violation of Sections 14(a) and 20(a) of the Exchange Act.

*Omissions and/or Material Misrepresentations Concerning Financial Projections*

26. The Proxy Statement fails to provide material information concerning financial projections by Store Capital management and relied upon by the Financial Advisors in their analyses. The Proxy Statement discloses management-prepared financial projections for the Company which are materially misleading. The Proxy Statement indicates that in connection with the rendering of its fairness opinion, that the Company prepared certain non-public financial forecasts (the "Company Projections") and provided them to the Board and the Financial Advisors

7

with forming a view about the stand-alone valuation of the Company. Accordingly, the Proxy Statement should have, but fails to provide, certain information in the projections that Store Capital management provided to the Board and the Financial Advisors. Courts have uniformly stated that "projections … are probably among the most highly-prized disclosures by investors. Investors can come up with their own estimates of discount rates or [] market multiples. What they cannot hope to do is replicate management's inside view of the company's prospects." *In re Netsmart Techs., Inc. S'holders Litig.*, 924 A.2d 171, 201-203 (Del. Ch. 2007).

27. For the Company Projections, the Proxy Statement provides values for non-GAAP (Generally Accepted Accounting Principles) financial metrics: Net Operating Income, Adjusted EVITDA, Adjusted Funds From Operations ("AFFO"), and Levered Free Cash Flow, but fails to provide line items used to calculate the metrics and a reconciliation of the non-GAAP metrics to their most comparable GAAP measures, in direct violation of Regulation G and consequently Section 14(a).

28. When a company discloses non-GAAP financial measures in a Proxy Statement that were relied on by a board of directors to recommend that stockholders exercise their corporate suffrage rights in a particular manner, the company must, pursuant to SEC regulatory mandates, also disclose all projections and information necessary to make the non-GAAP measures not misleading, and must provide a reconciliation (by schedule or other clearly understandable method) of the differences between the non-GAAP financial measure disclosed or released with the most comparable financial measure or measures calculated and presented in accordance with GAAP. 17 C.F.R. § 244.100.

29. The SEC has noted that:

> companies should be aware that this measure does not have a uniform definition and its title does not describe how it is calculated.

> Accordingly, a clear description of how this measure is calculated, as well as the necessary reconciliation, should accompany the measure where it is used. Companies should also avoid inappropriate or potentially misleading inferences about its usefulness. For example, "free cash flow" should not be used in a manner that inappropriately implies that the measure represents the residual cash flow available for discretionary expenditures, since many companies have mandatory debt service requirements or other non-discretionary expenditures that are not deducted from the measure.[1]

30. Thus, to cure the Proxy Statement and the materially misleading nature of the forecasts under SEC Rule 14a-9 as a result of the omitted information in the Proxy Statement, Defendants must provide a reconciliation table of the non-GAAP measures to the most comparable GAAP measures to make the non-GAAP metrics included in the Proxy Statement not misleading.

*Omissions and/or Material Misrepresentations Concerning Financial Analyses*

31. With respect to Evercore's *Dividend Discount Analyses*, the Proxy Statement fails to disclose: (i) the estimated terminal values of the Company; (ii) the inputs and assumptions underlying the use of perpetuity growth rate range of 3.5% to 4.5%; (iii) the inputs and assumptions underlying the use of NTM AFFO per share exit multiple range of 11.5x to 15.5x.

32. With respect to Evercore's *Selected Public Companies Trading Analyses*, the Proxy Statement fails to disclose the financial metrics for the companies selected for the analysis.

33. With respect to Evercore's *Selected Precedent Transaction Analysis*, the Proxy Statement fails to disclose: (i) the transactions reviewed; (ii) the date of each transaction; (iii) the financial metrics and multiples for each transaction selected for the analysis; and (iv) the basis for choosing a reference range of one calendar-year forward AFFO per share multiples of 13.0x to 15.0x.

---

[1] U.S. Securities and Exchange Commission, Non-GAAP Financial Measures, last updated April 4, 2018, available at: https://www.sec.gov/divisions/corpfin/guidance/nongaapinterp.htm

34. With respect to Evercore's *Equity Research Analyst Price Targets* analysis, the Proxy Statement fails to disclose the analysts observed and the corresponding price targets.

35. With respect to Goldman Sachs' *Selected Publicly Traded Companies Analysis*, the Proxy Statement fails to disclose the financial metrics for the companies selected for the analysis.

36. With respect to Goldman Sachs' *Illustrative Present Value of Future Share Price Analysis*, the Proxy Statement fails to disclose: (i) the basis for applying illustrative price to NTM AFFO multiples ranging from 11.5x to 15.5x; and (ii) the inputs and assumptions underlying the 9.0% discount rate.

37. With respect to Goldman Sachs' *Illustrative Levered Discounted Cash Flow Analysis*, the Proxy Statement fails to disclose: (i) the range of illustrative terminal values of the Company; (ii) the inputs and assumptions underlying the use of the range of terminal year multiples of 11.5x to 15.5x; (iii) the inputs and assumptions underlying the use of implied perpetuity growth rates ranging from (0.5)% to 3.4%; (iv) the inputs and assumptions underlying the use of discount rates ranging from 8.0% to 10.0%; and (v) the implied total number of fully diluted shares of common stock of the Company estimated to be outstanding as of September 13, 2022.

38. With respect to Goldman Sachs' *Premia Paid Analysis*, the Proxy Statement fails to disclose: (i) the transactions observed by Goldman Sachs; and (ii) the premia paid in those transactions.

39. In sum, the omission of the above-referenced information renders statements in the Proxy Statement materially incomplete and misleading in contravention of the Exchange Act. Absent disclosure of the foregoing material information prior to the special stockholder meeting to vote on the Proposed Transaction, Plaintiff will be unable to make a fully-informed decision

regarding whether to vote in favor of the Proposed Transaction, and he is thus threatened with irreparable harm, warranting the injunctive relief sought herein.

## CLAIMS FOR RELIEF

### COUNT I

**On Behalf of Plaintiff Against All Defendants for Violations of Section 14(a) of the Exchange Act and Rule 14a-9 and 17 C.F.R. § 244.100**

40. Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

41. Rule 14a-9, promulgated by the SEC pursuant to Section 14(a) of the Exchange Act, provides that proxy communications with stockholders shall not contain "any statement which, at the time and in the light of the circumstances under which it is made, is false or misleading with respect to any material fact, or which omits to state any material fact necessary in order to make the statements therein not false or misleading."  17 C.F.R. § 240.14a-9.

42. Defendants have issued the Proxy Statement with the intention of soliciting stockholder support for the Proposed Transaction.  Each of the Defendants reviewed and authorized the dissemination of the Proxy Statement and the use of their name in the Proxy Statement, which fails to provide critical information regarding, among other things, the financial projections that were prepared by the Company and relied upon by the Board in recommending the Company's stockholders vote in favor of the Proposed Transaction.

43. In so doing, Defendants made untrue statements of fact and/or omitted material facts necessary to make the statements made not misleading.  Each of the Individual Defendants, by virtue of their roles as officers and/or directors, were aware of the omitted information but failed to disclose such information, in violation of Section 14(a).  The Individual Defendants were therefore negligent, as they had reasonable grounds to believe material facts existed that were

misstated or omitted from the Proxy Statement, but nonetheless failed to obtain and disclose such information to stockholders although they could have done so without extraordinary effort.

44. Defendants were, at the very least, negligent in preparing and reviewing the Proxy Statement. The preparation of a Proxy Statement by corporate insiders containing materially false or misleading statements or omitting a material fact constitutes negligence. Defendants were negligent in choosing to omit material information from the Proxy Statement or failing to notice the material omissions in the Proxy Statement upon reviewing it, which they were required to do carefully. Indeed, Defendants were intricately involved in the process leading up to the signing of the Merger Agreement and the preparation and review of strategic alternatives.

45. The misrepresentations and omissions in the Proxy Statement are material to Plaintiff, who will be deprived of his right to cast an informed vote if such misrepresentations and omissions are not corrected prior to the vote on the Proposed Transaction. Plaintiff has no adequate remedy at law. Only through the exercise of this Court's equitable powers can Plaintiff be fully protected from the immediate and irreparable injury that Defendants' actions threaten to inflict.

## COUNT II

**On Behalf of Plaintiff Against the Individual Defendants for Violations of Section 20(a) of the Exchange Act**

46. Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

47. The Individual Defendants acted as controlling persons of Store Capital within the meaning of Section 20(a) of the Exchange Act as alleged herein. By virtue of their positions as directors of Store Capital, and participation in and/or awareness of the Company's operations and/or intimate knowledge of the incomplete and misleading statements contained in the Proxy Statement filed with the SEC, they had the power to influence and control and did influence and

control, directly or indirectly, the decision making of Store Capital, including the content and dissemination of the various statements that Plaintiff contends are materially incomplete and misleading.

48. Each of the Individual Defendants was provided with or had unlimited access to copies of the Proxy Statement and other statements alleged by Plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause the statements to be corrected.

49. In particular, each of the Individual Defendants had direct and supervisory involvement in the day-to-day operations of Store Capital, and, therefore, is presumed to have had the power to control or influence the particular transactions giving rise to the Exchange Act violations alleged herein, and exercised the same. The omitted information identified above was reviewed by the Board prior to voting on the Proposed Transaction. The Proxy Statement at issue contains the unanimous recommendation of the Board to approve the Proposed Transaction. The Individual Defendants were thus directly involved in the making of the Proxy Statement.

50. In addition, as the Proxy Statement sets forth at length, and as described herein, the Individual Defendants were involved in negotiating, reviewing, and approving the Merger Agreement. The Proxy Statement purports to describe the various issues and information that the Individual Defendants reviewed and considered. The Individual Defendants participated in drafting and/or gave their input on the content of those descriptions.

51. By virtue of the foregoing, the Individual Defendants have violated Section 20(a) of the Exchange Act.

52. As set forth above, the Individual Defendants had the ability to exercise control over and did control a person or persons who have each violated Section 14(a) and Rule 14a-9, by

their acts and omissions as alleged herein. By virtue of their positions as controlling persons, these defendants are liable pursuant to Section 20(a) of the Exchange Act. As a direct and proximate result of Individual Defendants' conduct, Plaintiff will be irreparably harmed.

53.     Plaintiff has no adequate remedy at law. Only through the exercise of this Court's equitable powers can Plaintiff be fully protected from the immediate and irreparable injury that Defendants' actions threaten to inflict.

## RELIEF REQUESTED

WHEREFORE, Plaintiff demands injunctive relief in his favor and against the Defendants jointly and severally, as follows:

A.     Preliminarily and permanently enjoining Defendants and their counsel, agents, employees and all persons acting under, in concert with, or for them, from proceeding with, consummating, or closing the Proposed Transaction, unless and until Defendants disclose the material information identified above which has been omitted from the Proxy Statement;

B.     Rescinding, to the extent already implemented, the Merger Agreement or any of the terms thereof, or granting Plaintiff rescissory damages;

C.     Directing the Defendants to account to Plaintiff for all damages suffered as a result of their wrongdoing;

D.     Awarding Plaintiff the costs and disbursements of this action, including reasonable attorneys' and expert fees and expenses; and

E.     Granting such other and further equitable relief as this Court may deem just and proper.

## JURY DEMAND

Plaintiff demands a trial by jury.

Dated: October 28, 2022         By:   **MELWANI & CHAN LLP**

15

*/s/ Gloria Kui Melwani*
Gloria Kui Melwani (GM5661)
1180 Avenue of the Americas, 8th Fl.
New York, NY 10036
Telephone: (212) 382-4620
Email: gloria@melwanichan.com

*Attorneys for Plaintiff*